UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Davenell L. Ash, | Civ. No. 23-2860 (JWB/LIB) |
| Plaintiff, | |
| v. | |
| | **ORDER** |
| Law Enforcement Agencies, *FBI, BCA, DHS, NSA, etc.*; and Duluth, MN Police Dept, | |
| Defendants. | |

---

Plaintiff Davenell L. Ash filed a Complaint (Doc. No. 1) and an Application to Proceed in District Court Without Prepaying Fees or Costs ("IFP Application") in this matter. (Doc. No. 2.) On November 16, 2023, it was explained to Plaintiff in an Order that there were several defects with her Complaint, and she was referred to the Federal Bar Association's Pro Se Project for possible help with drafting an Amended Complaint. (Doc. No. 5 at 1.) Pursuant to the Order, Ash's Complaint and IFP Application were held in abeyance for 90 days. (*Id.*) On November 21, 2023, a two-page letter from Ash, dated November 14, 2023, was received. (*See* Doc. No. 7.) The letter reported additional activity similar to that asserted in the Complaint and requested video discovery. (*Id.*) Based on the date provided on the letter, it appears it was sent prior to Ash receiving the November 16, 2023 Order.

Over 90 days have now passed since the November 16, 2023 Order, and Ash has not submitted an Amended Complaint. The Complaint and IFP Application are therefore

reviewed as filed under 28 U.S.C. § 1915. After review, and for the following reasons, this action is dismissed and the IFP Application is denied as moot.

## BACKGROUND

The Complaint's caption names two Defendants. (*See* Compl. 1.)[1] One is the "Duluth, Mn Police Dept," presumably meaning the Duluth Police Department ("DPD"). (*Id.*) The other is "Law Enforcement Agencies," by which Ash means (at least) the Federal Bureau of Investigation ("FBI"), Minnesota's Bureau of Criminal Apprehension ("BCA"), the Department of Homeland Security ("DHS"), and the National Security Agency ("NSA"). (*See id.* at 1–2.)

The Complaint has two main threads. (*See id.* at 9–12.) The first concerns Ash's interactions with DPD officers on September 7, 2023. (*See id.* at 9, 11.)[2] Ash recounts that early that morning, she was parked in front of her Duluth residence. (*See id.* at 9.) At about 1:30 a.m., she opened a car door to allow for air circulation and fell asleep. (*Id.*) Officer Cole Barkos, presumably with the DPD, approached Ash alongside several other DPD officers. (*Id.*)[3] Ash claims that Barkos began to question "and criminalize" her, then

---

[1]   Citations herein to filed materials use the page numbers provided by the District of Minnesota's CM/ECF filing system.

[2]   The first time Ash mentions this incident, she says it occurred on September 9, 2023. (*See* Compl. 9.) But other references—and documents that Ash submitted with the Complaint—suggest that September 7 is the correct date. (*See id.* at 11; Doc. No. 1-1 at 2, 4.)

[3]   Ash initially refers to this officer as "Barker," but later references and documents attached to the Complaint indicate that the relevant officer's actual name is Barkos. (*Compare* Compl. 9 *with id.* at 9; Doc. No. 1-1 at 2–4.)

initiated a field-sobriety test and forced her to complete a breathalyzer test. (*Id.*) Ash maintains that she was sober and told Barkos that several times. (*Id.* at 9, 11.) She alleges that even though she "blew zero on the breathalyzer," Barkos obtained a search warrant for her residence. (*Id.* at 9.) According to Ash, the search of her residence revealed no alcohol, but she was arrested for "DUI" and "forcibly taken to St Mary[']s hospital," where another warrant was issued and she was forced to submit a urine sample. (*Id.* at 9, 11.)[4] Ash claims that her car and purse were also searched as part of this process, and she alleges that both searches were illegal or inappropriate. (*See id.*)

The second part of the Complaint alleges a wide-ranging conspiracy against Ash, performed largely by the DPD but facilitated by "20 to 35 named and unnamed perpetrators." (*Id.* at 10.) The following extract from the Complaint gives a sense of Ash's allegations:

> Plaintiff Davenell L[.] Ash is currently being attacked by electrical technology in public areas, home, school, past employers, in her vehicle and in friends' homes. The original named and unnamed facilitators still narrate, moderate and instruct others through audio since inception of public exploitation efforts originating in Hibbing, MN which is also St Louis County, The consistent and retaliation efforts of The [DPD] consist of military drone raids done primarily at night using military grade drone technology to burn Plaintiff Ash causing undetectable bodily harm. Plaintiff Ash is burned in all vital organ areas of her body, If the Plaintiff Attempts to lay in bed she is burned from head to toe by electricity, microwave and radiation. The audio is used to cause the most mental trauma as the named and unnamed perpetrators narrate, moderate, communicate, issue death threats and attempt to command Plaintiff Ash 24 hours a day seven days a

---

[4]    Ash's allegations as to what happened at the hospital are somewhat hard to follow. In addition to a urine test, she reports being "forced" to take a blood test. But she also states that she "refused the blood draw," making it unclear whether she ever actually experienced a blood draw during this incident or not. (*See* Compl. 11.)

week. Any video captured is then sold on the internet for profit and played
in the community to harness more harassment. Plaintiff Ash is then
slandered, stalked and belittled openly to discredit all viability.

(*Id.* at 12; *see also id.* at 10 (presenting related allegations).)

Ash asserts claims under the U.S. Constitution's Fourth, Eighth, Thirteenth, and Fourteenth Amendments. (*See id.* at 5.) She also points to two Minnesota statutes, Minn. Stat. §§ 169A.51 and 171.177—the former addresses chemical tests for intoxication, while the latter concerns individuals' ability to refuse blood or urine tests in certain situations. (*See id.* at 5–8.) Ash provides no specific requests for relief. (*See id.* at 11–12 (comprising relevant section and containing no specific relief requests).)

## ANALYSIS

**I.      Standards of Review**

The *in forma pauperis* ("IFP") Application indicates that, as a financial matter, Ash qualifies for IFP status. But under the federal statute governing IFP proceedings, in such matters, "[n]otwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . is frivolous or malicious [or] fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2).[5]

---

[5]      While § 1915's wording uses the term "the case," this District's courts routinely use § 1915(e) to dismiss portions of cases as well. *See, e.g.*, *Frelix v. Hendrie Grant Lending Inc.*, No. 23-CV-0896 (DWF/TNL), 2023 WL 3571906, at *1 n.2 (D. Minn. May 18, 2023) (citing cases); *Jidoefor v. City of Minneapolis Police Dep't*, No. 22-CV-1686 (KMM/TNL), 2022 WL 19766779, at *3 (D. Minn. Oct. 11, 2022) (same), *report and recommendation adopted*, 2023 WL 2823159 (D. Minn. Apr. 7, 2023).

A case is frivolous when "it lacks an arguable basis either in law or in fact." *Denton v. Hernandez*, 504 U.S. 25, 31 (1992) (quotations omitted). For legal frivolity, a matter lacks an arguable legal basis if it is "based on an indisputably meritless legal theory." *Martinez v. Turner*, 977 F.2d 421, 423 (8th Cir. 1992). For factual frivolity, when a complaint has no factual allegations about a given defendant, it is factually frivolous as to that defendant. *See, e.g.*, *Lenear v. Coates*, No. 23-CV-0831 (ECT/JFD), 2023 WL 4901283, at *2 (D. Minn. Aug. 1, 2023) (citing cases).

To determine if a complaint states a claim on which a court may grant relief, the complaint's factual allegations are accepted as true and all reasonable inferences are drawn in the plaintiff's favor. *See, e.g.*, *Varga v. U.S. Bank Nat. Ass'n*, 764 F.3d 833, 836 (8th Cir. 2014). A complaint's factual allegations need not be detailed, but they must "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing authorities). A complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). Pro se complaints are to be construed liberally, but they must still allege enough facts to support the claims advanced. *See, e.g.*, *Sandknop v. Mo. Dep't of Corr.*, 932 F.3d 739, 741 (8th Cir. 2019).

**II.     Federal Claims Concerning September 2023 Incident**

Beginning with Ash's federal-law claims concerning her interactions with DPD officers in September 2023, as a threshold point, Ash cannot bring constitutional claims directly under the Constitution. Instead, she must bring those claims under 42 U.S.C. § 1983. *See, e.g.*, *Azul-Pacifico, Inc. v. City of Los Angeles*, 973 F.2d 704, 705 (9th Cir.

1992); *Canada v. Olmsted Cnty. Cmty. of Corrs.*, No. 21-CV-2120 (NEB/DTS), 2022 WL 607482, at *7 (D. Minn. Mar. 1, 2022) (citing *Wilson v. Spain*, 209 F.3d 713, 715 (8th Cir. 2000)), *aff'd*, No. 22-2104, 2022 WL 5235389 (8th Cir. July 27, 2022). Ash's constitutional claims against the DPD arising from the September 2023 incident are therefore treated as being claims asserted under § 1983.

To state a § 1983 claim, one must allege "a violation of a constitutional right committed by a *person* acting under color of state law." *Andrews v. City of W. Branch*, 454 F.3d 914, 918 (8th Cir. 2006) (emphasis added). Police departments, however, are not "persons" for § 1983 purposes. *See, e.g.*, *Ketchum v. City of W. Memphis*, 974 F.2d 81, 82 (8th Cir. 1992). On its face, then, the Complaint does not and cannot state a § 1983 claim against the DPD. The Complaint is therefore dismissed, for failure to state a claim, to the extent it brings constitutional claims against the DPD.

Even if Ash had sued a governmental entity that could be a proper § 1983 "person," the Complaint would still fail to state a claim. Section 1983 claims against an entity cannot rest on so-called vicarious liability—that is, an entity cannot be liable simply for unconstitutional conduct by one or more employees. *See, e.g.*, *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (citing cases). Instead, a plaintiff states a § 1983 claim against an entity only if she alleges that action pursuant to official municipal policy or custom caused her injury or if the municipality failed to adequately train its employees. *Connick*, 563 U.S. at 60 (citing *Monell v. N.Y. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)); *see also Snider v. City of Cape Girardeau*, 752 F.3d 1149, 1160 (8th Cir. 2014).

6

Here, nothing in Ash's discussion of the September 2023 incident presents any allegations of a relevant municipal policy, custom, or failure to train.

The Complaint is therefore dismissed without prejudice to the extent that it seeks to bring constitutional claims (under 42 U.S.C. § 1983) against the DPD based on the September 2023 incident.

### III.   Federal Claims Concerning Ongoing Conspiracy

The federal claims that remain are those based on Ash's allegations of a vast intergovernmental conspiracy seeking to harm her. These claims are factually frivolous for at least two reasons. First, Ash names a number of Defendants for which she presents no factual allegations. For instance, she brings claims against Minnesota's Bureau of Criminal Apprehension, the Department of Homeland Security, and the National Security Agency. But there are no factual allegations in her Complaint about these entities, making her claim factually frivolous with respect to those Defendants. The Complaint is therefore dismissed without prejudice with respect to any claims asserted against the BCA, DHS, and NSA.

The Complaint does present conspiracy-related allegations about the DPD and the FBI. For those Defendants, the Complaint is not factually frivolous because of a lack of substantive allegations. However, the Complaint is factually frivolous for other reasons. As the excerpt above makes clear, the claims asserted are implausible. Courts faced with similar claims of electronic surveillance and remote harm have treated them as implausible and insufficient to state claims. *See, e.g.*, *Hussein v. Minnesota*, No. 19-CV-

1913 (DSD/TNL), 2019 WL 5693733, at *3 (D. Minn. Nov. 4, 2019) (citing *Denton*, 504 U.S. at 32–33), *aff'd*, No. 19-3454, 2020 WL 2465352 (8th Cir. Jan. 21, 2020).

Given these issues, the Complaint is deficient with respect to its attempts to state any federal law claims against any Defendant based on Ash's allegations of a conspiracy to cause her harm. The claims are therefore dismissed without prejudice.

**IV.  Remaining State Claims**

Ash also has asserted potential state-law claims. The decision to dismiss all federal claims raises the question of whether this Court should exert jurisdiction over these remaining state claims. While district courts have "supplemental jurisdiction" over all other claims that are related to claims in the action that the court has original jurisdiction over, a district court may decline to exercise supplemental jurisdiction over those claims if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(a), (c).

On this issue, the U.S. Court of Appeals for the Eighth Circuit has stated that when a district court has dismissed all such claims, "judicial economy, convenience, fairness, and comity normally weigh against the exercise of supplemental jurisdiction." *Wells ex rel. Glover v. Creighton Preparatory Sch.*, 82 F.4th 586, 594 (8th Cir. 2023) (quotations omitted). There is no reason to depart from *Wells*'s guidance here. The Complaint is dismissed without prejudice, based on lack of jurisdiction, to the extent it presents any state-law claims.

## V. IFP Application

The conclusions above lead to the dismissal of this action in its entirety. Given this conclusion, the IFP Application is also denied as moot.

### ORDER

Based on the foregoing, and on all the files, records, and proceedings herein, **IT IS HEREBY ORDERED THAT:**

1. Plaintiff Davenell L. Ash's Complaint (Doc. No. 1) is **DISMISSED WITHOUT PREJUDICE**; and

2. Plaintiff's Application to Proceed in District Court Without Prepaying Fees or Costs (Doc. No. 2) is **DENIED** as moot.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: March 14, 2024         _s/ Jerry W. Blackwell_____
                              JERRY W. BLACKWELL
                              United States District Judge